**ACOUSTICS BY BOGGS, INC.**

v.

**DIETRICH INDUSTRIES, INC.**

No. CA 3–76–0878–C.

United States District Court,
N. D. Texas,
Dallas Division.

Feb. 23, 1979.

Tom D. Matthews, Jr., and Ruth E. Brock, Matthews & Matthews, Dallas, Tex., for plaintiff.

David N. Kitner, Strasburger & Price, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

Plaintiff and Defendant entered into a contract dated March 3, 1975, for the delivery of steel products by Defendant to Plaintiff.[1] Plaintiff contends that Defendant failed to deliver the steel as set out in the contract, that it covered under the terms of the Uniform Commercial Code, V.T.C.A., B. & C., § 2.712 and it suffered damages therefore, in the amount of $15,841.79 plus interest.

The Court finds that Plaintiff is a Texas corporation with its principal place of business in the State of Texas and that Defendant is a Pennsylvania corporation with its principal place of business in the State of Pennsylvania.

As there is diversity between the parties and $10,000 in controversy, the Court concludes that it has jurisdiction under 28 U.S.C. § 1332.

■ Defendant did make several deliveries of steel to Plaintiff in March, April and May of 1975 under the contract. The total amount due to Defendant for these deliveries was $34,569; the last of which was due for payment on July 31, 1975, under the terms of the contract. The bulk of the steel was so delivered that the total amount due or past due for payment on June 30, 1975, was $33,488.30. No payment had been made before that day, none was made on that day and none was made until August 21, 1975. Full payment was not made until October, 1975.

During the month of July, 1975, Defendant, through its officers, made numerous attempts by telephone to collect the overdue amounts. At that time, Plaintiff, through its officers, gave no reasons for non-payment.

Defendant continued its efforts to collect the unpaid balance in August. Only then, Plaintiff complained to Defendant that a small amount of the steel that had been

---

1. The contract was typewritten on a purchase order form of Plaintiff with the following terms stated:

    1. The prices shown on this purchase order are "Firm Fixed Prices", F.O.B. Jobsite or F.O.B. our warehouse with no price esculation (sic) of any kind allowable.
    2. Delivery of all materials to be no later than July 1, 1975. The buyer shall have the option however, to direct the seller to make later delivery of all or part of said materials. No shipments shall be made by the seller without written release from the buyer.
    3. The buyer shall have the option to make adjustments to the quantities (Stud Lengths only) reflected on the purchase order for a period of 90 days from date of order.
    4. The buyer shall have the option to increase or decrease the total quantity of the order by any amount up to 25% of the original

    quantity for a period of 90 days from the date of the order.
    5. All material is to be Hot Dipped Galvanized and suitable for storage in the elements for 1 year without rusting or otherwise deteriorating. Metal thickness shall have mill tolerance as follows:
    25 Gauge—.0185 inches to .027 inches thickness
    20 Gauge—. 032 inches to .045 inches thickness
    18 Gauge—. 040 inches to .054 inches thickness
    Lengths of Studs—Plus or minus ⅛ inch
    6. Terms of Payment shall be as follows: 2% cash discount shall be allowed for payments made by the 20th day of the 2nd month following the month in which the material is shipped. Net payment shall be due on the 31st day of the 2nd month following the month in which the material is shipped.

delivered had rusted. The value of this rusted steel was approximately $2,000. As over $34,000 was 30 days or longer past due and Plaintiff did not present its complaint until such a late date, the Court cannot find that the rusting of a small portion of the delivered steel was any part of the reason why Plaintiff did not pay the $34,000 owed.

Plaintiff's officers obtained extensions of time to order delivery of steel under the contract from Defendants, apparently, under paragraphs 2, 3 and 4 of the contract.[2]

Parties are in agreement that the last extension ran out on August 31, 1975.[3]

■ Plaintiff contends that it ordered 128,000 linear feet of 1½" Cold Roll Channel over the telephone on August 27, 1975.[4] The Court finds that Plaintiff has failed to show by a preponderance of the evidence that any such order was placed. Therefore, the options terminated on August 31, 1975, without Plaintiff having ordered the delivery of any steel that was not timely delivered to Plaintiff by Defendants.

Defendant offered in a mailgram of October 29, 1975, to ship the remainder of the contracted steel that had not been ordered for delivery by Plaintiff. This was done under the threat of a suit by Plaintiff. Plaintiff did not unconditionally accept this offer so Defendant withdrew this offer in a letter dated November 12, 1975.

■ Plaintiff contends that it purchased steel from other suppliers to "cover" for the contracted for steel that Defendant had not delivered.[5] Of course, for Plaintiff to be able to "cover," it must show that Defendant did not make delivery or repudiated the contract. As Defendant delivered all that it was required under the contract, any subsequent purchases by Plaintiff from other suppliers were for its benefit and not for the purpose of "covering" for the Defendant.

Based upon these findings, the Court shall enter judgment for Defendant.

2. Ibid.

3. Such modification was proper under V.T.C.A., B. & C., § 2.209.

4. This was steel covered by paragraph 2 of the contract, see footnote 1.

